**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Annessa Y. Morrison, | No. CV-14-08211-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Annessa Morrison, appearing on her own behalf, seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for an award of benefits.

**I.  Background.**

Plaintiff was born on November 9, 1968. She has an associate degree in graphic design. She has worked as a professional singer, a waitress, a sales manager, and a videogame tester. Plaintiff suffers from various impairments, including fibromyalgia. A.R. 55. As described by the Ninth Circuit,

> [F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. . . .  Common symptoms . . .

> include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.

*Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004) (citations omitted); *see also Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001); SSR 12-2P, 2012 WL 3104869 (July 25, 2012).

On January 25, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning September 17, 2007. On November 9, 2012, Plaintiff appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On December 14, 2012, the ALJ decided that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

**II.    Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance. *Id.* It is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and that she has not engaged in substantial gainful activity since September 17, 2007. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia and depression. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [S]edentary work as defined in 20 C.F.R. 404.1567(a) except that the claimant requires an opportunity to sit/stand for a few minutes each hour. The claimant can occasionally engage in postural activities. The claimant can frequently do hand work. The claimant must have limited public contact.

A.R. 16. The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV. Analysis.**

**A.   The ALJ Erred in Evaluating Plaintiff's Credibility.**

Plaintiff argues: (1) The ALJ failed to apply SSR 12-2p in evaluating her fibromyalgia; (2) The ALJ failed to apply SSR 96-4p in evaluating the limitations from her severe impairments of fibromyalgia and depression; and (3) The ALJ failed to apply SSR 96-7 in assessing her credibility. Doc. 25 at 2. The Court interprets these arguments as an objection to the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms are not credible. A.R. 18.

**1.   Legal Standard.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citations omitted). "In this analysis, the claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the claimant's testimony about the testimony of her symptoms only by offering specific,

- 4 -

clear, and convincing reasons for doing so. *Id.* at 1014-15; *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

To support a lack of credibility finding, the ALJ must "'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" *Vasquez*, 572 F.3d at 592 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). Specific facts that are relevant to this determination include: (1) the claimant's reputation for truthfulness; (2) the inconsistencies in her testimony; (3) the extent to which claimant's daily activities show that she is capable of working; (4) the extent to which the claimant seeks treatment for her symptoms; (5) the claimant's failure to follow a prescribed course of treatment; and (6) the opinions of physicians and third parties concerning the nature and severity of the claimant's symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Smolen*, 80 F.3d at 1284.

### 2. Claimant's Testimony.

At the hearing (A.R. 27-53), Plaintiff testified that she lived in a house with her husband and eighteen-year-old daughter. She has previously worked as a professional singer, a customer service representative for a financial company, a waitress, a sales manager for an auto-sales magazine, and a videogame tester. She had to leave her job as a customer service representative because she took too many sick days. She left her most recent job as a videogame tester because she was "in pain . . . [and] couldn't sit in a chair and do the video game anymore." A.R. 33. Plaintiff's "big issue" is fibromyalgia. Starting eight years ago, "[t]he fatigue was enormous and I could count on a crash every day where you're so exhausted you could barely move but you can't sleep. The pain had started spreading through my muscles and I had very severe migraine headaches at the time." A.R. 35. In the spring and fall, she experiences as many as fifteen severe migraines that incapacitate her for a day. In the summer and winter, she has about five. Plaintiff stated that she was not able to function during her migraines. A.R. 39.

Plaintiff also testified about her daily activities. On "a good day I get up, spend a couple of hours watching T.V. in bed, taking my pills. I can make it down to get a muffin or frozen waffle for breakfast. I might be able to spend 20, 30 minutes cooking in the early evening, maybe an hour on the computer doing some research on my condition and the rest of the time I'm pretty much lying or leaning back in some way." A.R. 46. On a bad day, she will come downstairs for food but will otherwise stay in bed. She has about ten bad days a month. Plaintiff can usually do thirty to sixty minutes of household chores a day, but has difficulty carrying laundry and vacuuming. She is unable to do grocery shopping on her own, although she sometimes accompanies her husband to the store. For hobbies, Plaintiff does sculpture and paints on small canvases. For exercise, she does leg lifts and arm circles in the hot tub, and she can walk one or two blocks on "a good day." A.R. 46.

### 3. ALJ's Decision.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. A.R. 18.

In support of this finding, the ALJ focused on Plaintiff's daily activities. The ALJ noted the following facts: Plaintiff engaged in container gardening, cooked basic meals, performed "all self-care activities" such as bathing and washing, possessed a driver's license and was able to drive, exercised "in her hot tub" and by going for walks, performed household chores such as washing dishes and doing laundry, cared for her teenage daughter, enjoyed hobbies such as painting and sculpting, played an online videogame frequently, and engaged in "fun activities" such as going to the movies and playing games with her family. A.R. 18-19. The ALJ also noted that in 2008 Plaintiff was writing songs and had auditioned for a rock band.

1     The ALJ appeared skeptical that fibromyalgia was the true cause of Plaintiff's impairments and inability to work. The ALJ noted that in a therapy session Plaintiff had stated that her custody issues with her ex-spouse had prevented her from accepting a recording contract. The ALJ highlighted a medical evaluation that gave Plaintiff a "probable" fibromyalgia diagnosis but stated that all of Plaintiff's symptoms could not be explained on the basis of fibromyalgia alone. The ALJ also noted that "[i]n February 2010, the claimant reported that she was not sure whether she had actually been diagnosed with fibromyalgia and had been advised by various specialists to find a 'life coach.'" A.R. 19. Finally, the ALJ noted that Plaintiff had been to multiple doctors, that Plaintiff had found them unhelpful, and that she had refused to take anti-depressants.

The ALJ gave great weight to two medical opinions. The first was a psychological evaluation by Donald Degroot, Ph.D, who found that Plaintiff's mental impairments did not interfere with her daily activities and abilities. The second was a medical evaluation by Sidney Eisenbaum, M.D., who found "no impediments with the claimant" and that claimant was "capable of most activities." A.R. 411.

**4.  Analysis.**

The ALJ failed to give specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

First, Plaintiff's daily activities are not inconsistent with her reported limitations. None of the daily activities that the ALJ cited are inconsistent with Plaintiff's testimony that, on a good day, she is able to perform a few hours of activities but otherwise must stay in bed. Nor are the activities inconsistent with Plaintiff's testimony that ten times a month she has "bad days" in which she must stay in bed nearly the entire day. Daily activities "may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). But cooking basic meals, doing laundry, enjoying a few hobbies, and being able to drive – for a few hours on good days

and not at all on 11 bad days per month – do not mean that Plaintiff is able to work eight hours a day, five days a week.[1]

The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). And yet the ALJ relied on precisely those sorts of activities in finding Plaintiff's reported symptoms to be not credible. The Ninth Circuit has addressed factual situations similar to the present case and found:

> The ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is consistent . . . . with an inability to function in a workplace environment.

*Garrison*, 759 F.3d at 1016. Plaintiff's daily activities are not a clear and convincing reason for rejecting her pain testimony. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The two medical opinions on which the ALJ relied are an insufficient basis for discrediting Plaintiff's testimony. Donald Degroot, Ph.D., provided a psychological examination of Plaintiff. He noted that Plaintiff had "little energy" and that she "appeared to be in obvious pain." A.R. 401. He concluded that Plaintiff's "daily and social activities and abilities do not appear to be impaired" by depression and that her cognitive abilities were above average. A.R. 403. He also found that Plaintiff's concentration, ability to understand, remember, carry out complex instructions, and her ability to interact appropriately with coworkers and the public were moderately impaired.

---

[1] The Court also notes that the ALJ mischaracterized some of the record. While the ALJ stated that Plaintiff enjoys going to the movies, the cited report states that "[h]er fun activities include movies and games with the family. . . . She reports she is not able to continue her hobbies or fun activities[.]" A.R. 400.

- 8 -

A.R. 403-04. While these findings indicate that Plaintiff's depression is not debilitating, they do not speak to the pain Plaintiff experiences from fibromyalgia.

Sidney Eisenbaum, M.D., physically examined Plaintiff on May 31, 2011. He made the following findings:

> She can sit for 15 minutes and stand for 30 minutes before getting tired. She can walk approximately 500 feet. She can lift and carry 10 to 15 pounds . . . . Her manual dexterity, vision, hearing, and speech are excellent. She can climb 16 steps and appears to be capable of stooping, kneeling, pushing, pulling, balancing, crouching crawling, reaching, and feeling. . . . She had a diagnosis of fibromyalgia made in the past, but today her clinical exam is normal. I do believe that she is capable of most activities.

A.R. 411. This is relevant evidence in assessing the extent of Plaintiff's pain. It does not, however, rise to the level of a specific, clear, and convincing reason for rejecting Plaintiff's pain testimony.

Dr. Eisenbaum's opinion may support a conclusion that Plaintiff does not suffer from fibromyalgia. But the ALJ had already found that Plaintiff suffered from fibromyalgia. A.R. 14. Dr. Eisenbaum's opinion, therefore, is relevant only in deciding whether Plaintiff's reported symptoms are credible. Notably, the doctor did not contradict or address Plaintiff's claims of extreme pain and fatigue. Where an ALJ has found that a claimant suffers from fibromyalgia, the claimant testifies that she must remain in bed most of the day because of fibromyalgia, and a doctor does not contradict that testimony beyond casting doubt on claimant's diagnosis, the doctor's opinion does not constitute a clear and convincing reason for discrediting the claimant's testimony.

Dr. Eisenbaum's opinion is also fairly consistent with Plaintiff's testimony. The doctor opined that Plaintiff can sit for fifteen minutes and stand for thirty minutes before getting tired and that she can walk approximately 500 feet. Similarly, Plaintiff testified that she could sit twenty to thirty minutes and stand for ten minutes without needing to move, and that on a good day she can walk once or twice around the block. A.R. 46. Dr. Eisenbaum opined that Plaintiff is "capable of most activities," including crouching, kneeling, reaching, and similar efforts. Plaintiff did not testify to the contrary. The issue

is Plaintiff's debilitating pain.  Because Dr. Eisenbaum did not directly address this issue, his opinion does not constitute a clear and convincing reason for rejecting Plaintiff's testimony.

The other reasons that the ALJ gave for rejecting Plaintiff's testimony are also insufficient.  The ALJ appeared to doubt that Plaintiff's fibromyalgia could cause the degree of pain that Plaintiff claimed she suffered.  The ALJ noted that other issues, such as custody disputes, may have contributed to or caused Plaintiff's pain.  But "the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged."  *Smolen*, 80 F.3d at 1282 (emphasis in original).

Finally, the ALJ emphasized that Plaintiff had been to multiple doctors, that Plaintiff had found them unhelpful, and that she had refused to take anti-depressants.  Seeking out multiple doctors is not a convincing reason for rejecting Plaintiff's testimony.  Indeed, this fact may bolster Plaintiff's claim of debilitating pain.  The finding that Plaintiff refused antidepressants is relevant in assessing her credibility.  *See Lingenfelter*, 504 F.3d at 1040.  The record, however, also reveals that Plaintiff has taken multiple antidepressants in the past and that they did not alleviate her pain.  A.R. 401.

The record contains numerous reports of Plaintiff's fibromyalgia and pain.  A.R. 251, 290, 299, 401, 409-10, 446.  Plaintiff's testimony at the hearing was consistent with these reports.  Furthermore, Plaintiff was not required to provide "objective medical evidence to corroborate the severity of the pain alleged."  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  The Court finds that the ALJ failed to give specific, clear, and convincing reasons for rejecting Plaintiff's pain testimony.

**B.     Remaining Arguments.**

Plaintiff makes additional arguments for reversing the ALJ, including: (1) the ALJ did not accurately present the claimant's testimony; (2) the ALJ erred in the weight given to treatment records; (3) the ALJ failed to apply SSR 96-8p in assessing the disability; and (4) the ALJ failed to establish that there are sufficient jobs in the national economy

1 that Plaintiff can perform. Doc. 25 at 3-4. Because the ALJ improperly discredited
2 Plaintiff's testimony and the appropriate remedy is a remand for an award of benefits, the
3 Court finds it unnecessary to address these arguments.

**V.     Remand.**

When an ALJ improperly rejects a claimant's excess pain testimony, the Court must credit that testimony as true. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Under the credit-as-true rule, an action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Garrison*, 759 F.3d at 1020 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-102 (9th Cir. 2014). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the record is fully developed and further administrative proceedings would not serve a useful purpose. Plaintiff's reports of her symptoms have been clear and consistent. A.R. 251, 290, 299, 401, 409-10, 446. The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's pain testimony. Finally, if Plaintiff's pain testimony were credited as true, the ALJ would be required to find her disabled. At the hearing, the vocational expert testified:

> Q. What kind of absenteeism is tolerated?
>
> A. An average of one to two times per month.
>
> Q. So even if the claimant gets to work, is working but then has to leave after, say, two or three hours because of pain issues and/or gets a migraine is that as bad as an absence?

- 11 -

      A.      That would be included in the missing one to two times per month.

      Q.      Okay, and then if she's at work but trying to get through the day either dealing with the pain or getting a migraine but this does cause her to make mistakes, get behind on her work and this happens several times a month even though she gets to work and stays at work the full time but her productivity is suffering. How much of that would be tolerated?

      A.      The amount of time generally accepted for someone to be off task would be about 10 percent so anything in excess of that would not be consistent with competitive employment.

A.R. 51-52. Plaintiff testified that on a good day she spends all but two or three hours in bed. A.R. 46. Ten times per month she spends the entire day in bed. A.R. 46-47. Crediting this testimony as true, Plaintiff would miss far more than one or two days of work a month. Furthermore, even if Plaintiff came to work, she would be "off task" for more than ten percent of her time there. Based on the vocational expert's testimony, this would render Plaintiff disabled and incapable of work.

     **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits. The Clerk shall enter judgment accordingly and **terminate** this case.

     Dated this 30th day of April, 2015.

_David G. Campbell_
United States District Judge