**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Annessa Y. Morrison,

               Plaintiff,

v.

Commissioner of Social Security,

               Defendant.

No. CV-14-08211-PCT-DGC

**AMENDED ORDER**

Plaintiff Annessa Morrison, appearing on her own behalf, seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

## I.  Background.

Plaintiff was born on November 9, 1968.  She has an associate degree in graphic design.  She has worked as a professional singer, a waitress, a sales manager, and a videogame tester.  Plaintiff suffers from various impairments, including fibromyalgia.  A.R. 55.  As described by the Ninth Circuit,

> [F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. . . .  Common symptoms . . .

include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.

*Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004) (citations omitted); *see also Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001); SSR 12-2P (July 25, 2012).

On January 25, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning September 17, 2007. On November 9, 2012, Plaintiff appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On December 14, 2012, the ALJ decided that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

**II.    Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance. *Id.* It is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.     The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and that she has not engaged in substantial gainful activity since September 17, 2007. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia and depression. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

[S]edentary work as defined in 20 C.F.R. 404.1567(a) except that the claimant requires an opportunity to sit/stand for a few minutes each hour. The claimant can occasionally engage in postural activities. The claimant can frequently do hand work. The claimant must have limited public contact.

A.R. 16. The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV.  Analysis.

### A.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

Plaintiff argues: (1) The ALJ failed to apply SSR 12-2p in evaluating her fibromyalgia; (2) The ALJ failed to apply SSR 96-4p in evaluating the limitations caused by fibromyalgia and depression; (3) The ALJ failed to apply SSR 96-7p in assessing her credibility; and (4) The ALJ did not accurately present her testimony. The Court finds that two of the cited social security rulings, SSR 12-2p and 96-4p, are not directly relevant to Plaintiff's argument, which focuses on whether the ALJ properly discredited Plaintiff's testimony.[1]  SSR 96-7p, which discusses how an adjudicator is to assess a claimant's allegations of pain, is relevant to this argument. The Court will therefore address whether the ALJ properly presented and discredited Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms.

---

[1] SSR 12-2p (July 25, 2012) addresses how an adjudicator is to decide if fibromyalgia is a medically determinable impairment, and how fibromyalgia is evaluated in assessing a claimant's disability. SSR 96-4p (July 2, 1996) clarifies that a symptom is not a medically determinable impairment, that a medically determinable impairment must exist for a finding of disability, and that symptoms can cause exertional or nonexertional limitations. Plaintiff does not explain how the ALJ violated the two rulings, and the Court finds that the ALJ's decision to be consistent with them. The ALJ appropriately found that Plaintiff's fibromyalgia is a medically determinable impairment and evaluated it in assessing Plaintiff's disability. The ALJ also did not confuse symptoms with impairments and appropriately considered the kinds of limitations that Plaintiff's symptoms might impose.

1        **1.    Legal Standard.**

2        An ALJ engages in a two-step analysis to determine whether a claimant's

3    testimony regarding subjective pain or symptoms is credible.  *Vasquez v. Astrue*, 572

4    F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has

5    presented objective medical evidence of an underlying impairment that could reasonably

6    be expected to produce the pain or other symptoms alleged.  *Garrison v. Colvin*, 759 F.3d

7    995, 1014 (9th Cir. 2014) (citations omitted).   "In this analysis, the claimant is *not*

8    required to show 'that her impairment could reasonably be expected to cause the severity

9    of the symptom she has alleged; she need only show that it could reasonably have caused

10   some degree of the symptom.'"  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th

11   Cir. 1996)).   Second, if there is no evidence of malingering, the ALJ may reject the

12   claimant's testimony about the testimony of her symptoms only by offering specific,

13   clear, and convincing reasons for doing so.  *Id.* at 1014-15; *Burrell v. Colvin*, 775 F.3d

14   1133, 1136-37 (9th Cir. 2014).

15       To support a lack of credibility finding, the ALJ must "'point to specific facts in

16   the record which demonstrate that [the claimant] is in less pain than she claims.'"

17   *Vasquez*, 572 F.3d at 592 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

18   Specific facts that are relevant to this determination include: (1) the claimant's reputation

19   for truthfulness; (2) the inconsistencies in her testimony; (3) the extent to which

20   claimant's daily activities show that she is capable of working; (4) the extent to which the

21   claimant seeks treatment for her symptoms; (5) the claimant's failure to follow a

22   prescribed course of treatment; and (6) the opinions of physicians and third parties

23   concerning the nature and severity of the claimant's symptoms.  *Lingenfelter v. Astrue*,

24   504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

25   Cir. 1997); *Smolen*, 80 F.3d at 1284.

26       **2.    Claimant's Testimony.**

27       At the hearing (A.R. 27-53), Plaintiff testified that she lived in a house with her

28   husband and eighteen-year-old daughter.  She has previously worked as a professional

- 5 -

singer, a customer service representative for a financial company, a waitress, a sales manager for an auto-sales magazine, and a videogame tester.  She had to leave her job as a customer service representative because she took too many sick days.  She left her most recent job as a videogame tester because she was "in pain . . . [and] couldn't sit in a chair and do the video game anymore."  A.R. 33.  Plaintiff's "big issue" is fibromyalgia.  Starting eight years ago, "[t]he fatigue was enormous and I could count on a crash every day where you're so exhausted you could barely move but you can't sleep.  The pain had started spreading through my muscles and I had very severe migraine headaches at the time."  A.R. 35.  In the spring and fall, she experiences as many as fifteen severe migraines that incapacitate her for a day.  In the summer and winter, she has about five.  Plaintiff stated that she was not able to function during her migraines.  A.R. 39.

Plaintiff also testified about her daily activities.  On "a good day I get up, spend a couple of hours watching T.V. in bed, taking my pills.  I can make it down to get a muffin or frozen waffle for breakfast.  I might be able to spend 20, 30 minutes cooking in the early evening, maybe an hour on the computer doing some research on my condition and the rest of the time I'm pretty much lying or leaning back in some way."  A.R. 46.  On a bad day, she will come downstairs for food but will otherwise stay in bed.  She has about ten bad days a month.  Plaintiff can usually do thirty to sixty minutes of household chores a day, but has difficulty carrying laundry and vacuuming.  She is unable to do grocery shopping on her own, although she sometimes accompanies her husband to the store.  For hobbies, Plaintiff sculpts and paints on small canvases.  For exercise, she does leg lifts and arm circles in the hot tub, and she can walk one or two blocks on "a good day."  A.R. 46.

### 3.    ALJ's Decision.

In discrediting Plaintiff's testimony, the ALJ relied on numerous pieces of evidence and testimony.  A.R. 16-20.  The evidence that the ALJ cited reveals two reasons for rejecting Plaintiff's testimony: (1) Medical opinions are not consistent with Plaintiff's testimony, and (2) Plaintiff's daily activities show that her symptoms are not as

severe as she claims.  Based on these reasons and the evidence supporting them, the Court finds that the ALJ properly discredited Plaintiff's testimony regarding her pain and symptoms.

The Ninth Circuit's decision in *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001) is instructive.  Kathryn Rollins suffered from fibromyalgia.  She claimed that she experienced severe pain throughout her body and this pain prevented her from working.  The ALJ found her testimony to be not credible.  In affirming, the Ninth Circuit highlighted two findings that supported the ALJ's decision.  First, doctors who had examined Rollins had found that she was not restricted in her activity.  And second, "Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry . . . and so forth."  *Id.* at 857.  These findings, similar to the ALJ's findings in this case, were a sufficient basis for discrediting Rollins' testimony.

As in *Rollins*, the medical opinions in this case are not consistent with Plaintiff's claims of disabling pain.  The ALJ gave great weight to two opinions.  The first was a psychological evaluation by Donald Degroot, Ph.D, who concluded that Plaintiff's "daily and social activities and abilities do not appear to be impaired" by depression and that her cognitive abilities were above average.  A.R. 403.  The second opinion was a medical evaluation by Sidney Eisenbaum, M.D., who physically examined Plaintiff and found: "She had a diagnosis of fibromyalgia made in the past, but today her clinical exam is normal.  I do believe that she is capable of most activities."  A.R. 411.  These opinions strongly support the ALJ's decision.  And "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

The testimony and record regarding Plaintiff's daily activities are also not consistent with Plaintiff's claim of disabling pain.  The ALJ highlighted the following

facts: Plaintiff engaged in container gardening, cooked basic meals, performed "all self-care activities" such as bathing and washing, possessed a driver's license and was able to drive, exercised "in her hot tub" and by going for walks, performed household chores such as washing dishes and doing laundry, cared for her teenage daughter, enjoyed hobbies such as painting and sculpting, played an online videogame frequently, wrote songs, auditioned for a rock band, and engaged in "fun activities" such as going to the movies and playing games with her family.  A.R. 18-19.[2]

Plaintiff's daily activities are similar to those of the claimant in *Rollins*, and they undermine Plaintiff's pain testimony.  A woman who can take care of her child, enjoy various hobbies, and audition for a rock band is not likely to be one who must spend most of her day in bed, as Plaintiff claims.  The Court is aware that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  But daily activities "may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'"  *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  Here, Plaintiff has been engaged in extensive daily activities, and medical opinions have cast doubt on her claims of disabling pain.  The ALJ, therefore, did not err in relying on Plaintiff's daily activities as a reason for rejecting her testimony.

In discrediting Plaintiff's testimony, the ALJ also relied on other types of evidence.  For example, the ALJ highlighted a medical evaluation giving Plaintiff a "probable" fibromyalgia diagnosis but stating that all of Plaintiff's symptoms could not

---

[2] The Court notes that the ALJ mischaracterized some of the record.  While the ALJ stated that Plaintiff enjoys going to the movies, the cited report states that "[h]er fun activities include movies and games with the family. . . .  She reports she is not able to continue her hobbies or fun activities[.]"  A.R. 400.  Plaintiff also argues that the ALJ misstated that her daughter helps her prepare dinner once a week.  Doc. 25 (citing A.R. 17).  The Court finds this mistake to be immaterial.

be explained on the basis of fibromyalgia alone.  *See* A.R. 251.  The ALJ also noted that "[i]n February 2010, the claimant reported that she was not sure whether she had actually been diagnosed with fibromyalgia and had been advised by various specialists to find a 'life coach.'"  A.R. 19.  Finally, the ALJ noted that Plaintiff had been to multiple doctors, that Plaintiff had found them unhelpful, and that doctors had not taken her complaints seriously.

This evidence supports a finding that Plaintiff's fibromyalgia is not as severe as she claims.  If doctors have doubted that fibromyalgia could cause all of her claimed symptoms, doctors have not taken her complaints seriously, and Plaintiff herself has not been sure of her diagnosis, then the ALJ could reasonably conclude that Plaintiff's fibromyalgia is unlikely to cause the alleged symptoms.  The Court recognizes that Plaintiff is not required to provide "objective medical evidence to corroborate the severity of the pain alleged," *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc), and that "the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Smolen*, 80 F.3d at 1282 (emphasis in original).  But when combined with the other reasons the ALJ gave for discrediting Plaintiff, this evidence bolsters the ALJ's final conclusion.  In sum, the ALJ gave specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her pain and symptoms.

**B.     Additional Arguments.**

**1.     The ALJ Did Not Err in Discounting Treatment Records.**

Plaintiff argues that the ALJ erred in giving little weight to records from various treatment providers.  In her decision, the ALJ stated: "As for the other records, the undersigned has considered records from the claimant's treatment providers and also accords them little weight as they do not give any opinion as to the claimant's work-related abilities and only contain notes documenting the course of treatment."  A.R. 20. Plaintiff does not explain how this statement was erroneous or point to specific records that the ALJ improperly discounted.  Rather, Plaintiff cites one exhibit (A.R. 231-38) that

lists numerous records that document Plaintiff's possible impairments. To the extent that Plaintiff asks the Court to review every treatment record and decide whether the ALJ properly discounted it, the Court declines to do so. "Plaintiff bears the burden of establishing that the ALJ's decision was not based on substantial evidence or that the ALJ's decision was based on legal error." *Santiago v. Barnhart*, 278 F. Supp. 2d 1049, 1056 (N.D. Cal. 2003). By merely claiming error and citing an exhibit that lists numerous records, Plaintiff has not carried that burden.

### 2.    The ALJ Did Not Err in Assessing Plaintiff's RFC.

Citing SSR 96-8P (July 2, 1996), Plaintiff argues that the ALJ erred in assessing Plaintiff's residual functional capacity.[3] The ALJ found that Plaintiff is capable of sedentary work and occasional "postural activities." A.R. 16. This finding is supported by substantial evidence, including the opinions of Doctors Degroot and Eisenbaum. A.R. 403, 411. Plaintiff also recounts portions of her testimony that are inconsistent with the ALJ's finding. The Court has already found that the ALJ did not err in rejecting Plaintiff's testimony. The ALJ's RFC assessment was not erroneous.

### 3.    A Significant Number of Jobs Exist in the National Economy.

Plaintiff argues that the ALJ improperly found that there are a significant number of jobs in the national economy that she is capable of performing. Under the Social Security Act, a claimant is considered disabled if:

> [H]e is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives . . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

---

[3] SSR 96-8p discusses how to appropriately assess a claimant's RFC. The ruling defines the RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." The ruling then lists the evidence and factors that an adjudicator may consider in assessing a claimant's RFC. The ALJ's assessment of Plaintiff's RFC was consistent with this ruling.

42 U.S.C. § 1382c(a)(3)(B).  Interpreting this statute, the Ninth Circuit has found that 25,000 jobs existing in the national economy constitutes a "significant number." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014).  The ALJ found that Plaintiff is capable of working as an address clerk and that there exist approximately 84,000 address-clerk positions in the national economy.  Under Ninth Circuit law, this is a sufficient number of possible jobs.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.  The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 30th day of April, 2015.

_____
David G. Campbell
United States District Judge